IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHANDA L. SULFRIDGE,                    :

     Plaintiff,                         :
                                    Case No. 3:05cv088
         vs.                             :
                                   JUDGE WALTER HERBERT RICE

MONTGOMERY COUNTY, *et al.*,            :

     Defendants.                        :

---

**DECISION AND ENTRY SUSTAINING DEFENDANT FOLEY'S MOTION
FOR SUMMARY JUDGMENT (DOC. #30) AND DEFENDANTS VORE'S
AND BRANDS'S MOTION FOR SUMMARY JUDGMENT (DOC. #34);
PLAINTIFF'S STATE LAW CLAIMS DISMISSED WITHOUT PREJUDICE
TO REFILING IN STATE COURT OF COMPETENT JURISDICTION;
INSTRUCTIONS TO DEFENDANTS; TERMINATION ENTRY**

---

     The Plaintiff, Shanda L. Sulfridge, brings suit against the following three

Defendants,[1] in both their individual and official capacities:[2]  (1) Daniel J. Foley, the

---

     [1]In her Complaint, the Plaintiff also included, as Defendants, Montgomery
County and the three Montgomery County Commissioners - - Charles J. Curran,
Deborah Lieberman and Vickie D. Pegg. Doc. #2.  Subsequently, the parties
stipulated to the dismissal of these Defendants, with prejudice. Doc. #15.

     [2]The Court interprets the Complaint as bringing suit against Foley and Vore in
both their individual and official capacities, based on the wording of paragraph 5,
which provides that these Defendants "are being sued individually and in their
representative capacities." Doc. #19 ¶ 5.  The Plaintiff includes no such language
about Brands, however.

     In general, if a plaintiff does not allege individual capacity in her complaint,
the court will assume an official capacity suit. Wells v. Brown, 891 F.2d 591, 593
(6th Cir. 1989).  If, however, the complaint does not specifically so state, but the

Montgomery County Clerk of Courts ("Foley" or "Clerk of Courts"), (2) Dave Vore, the Montgomery County Sheriff ("Vore" or "Sheriff"), and (3) John Brands, a sergeant in the Montgomery County Sheriff's Department ("Brands" or "Sergeant"). Doc. #19.  Sulfridge brings this action pursuant to 42 U.S.C. § 1983.  She generally premises her Complaint on the following allegedly unconstitutional actions:  (1) her arrest, pursuant to a warrant that erroneously contained her social security number (Count One; Defendant Foley); (2) the treatment she received while being detained subsequent to the arrest, but before trial (no trial ever took place) (Count Two; Defendant Vore); and (3) once released and upon filing an internal grievance with the Sheriff's office, the manner in which the Sheriff's Department handled that grievance (Count Three; Defendants Vore and Brands).[3] Id.  As to the constitutional rights allegedly violated by the Defendants, the Plaintiff cites violations of her rights

_____

defendant nevertheless receives adequate notice that the plaintiff intends to pursue an individual capacity claim, the court will treat the suit as being one against the defendant, in both his individual and official capacities. E.g., Pelfrey v. Chambers, 43 F.3d 1034, 1038 (6th Cir. 1995) (plaintiff made clear, in a memorandum, that he intended to bring suit against defendants in their individual capacities); see also Perry v. Croucher, 1998 U.S. App. LEXIS 21621, **31-30 (6th Cir. Aug. 31, 1998) (court assumed suit was against defendant, in both individual and official capacities, because, among other reasons, defendant claimed qualified immunity as defense).

Here, Brands asserts a qualified immunity defense, which is only applicable in individual capacity suits. Doc. #34 at 11-12.  Therefore, the Court assumes that Defendant Brands was put on notice that he was being sued in both his individual and official capacities, and, moreover, that he realized such.

[3]The Complaint also contains Count 4, which is an allegation of a state law assault and battery. Doc. #19 ¶¶61-63.  The Plaintiff does not appear to be claiming that the assault and battery are violations of her rights under the Constitution or federal law. See id.

2

under the Eighth and Fourteenth Amendments. Id. ¶ 41 (in Count 2). In her

memorandum in opposition to Foley's Motion for Summary Judgment, the Plaintiff

adds to this an alleged violation of her rights under the Fourth Amendment. Doc.

#36 at 10 (alleging a Fourth Amendment right, as an innocent person, to be free

from unlawful arrest and imprisonment). Sulfridge also asserts various state law

claims throughout her Complaint, to include false imprisonment, negligence, and

assault and battery. Doc. #19.

Along with arguing that the Plaintiff has not set forth a case under 42 U.S.C.

§ 1983, the Defendants assert that they have qualified immunity (as to all three

Defendants), immunity under the Eleventh Amendment (as to Foley) and absolute

judicial immunity (as to Foley).[4] Docs. #30, #34, #37 and #40.

The Court will examine the claims in the order asserted by the Plaintiff, first

addressing the issue of Section 1983 liability and then, to the extent necessary, the

question of immunity.


I.      SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

---

[4]Vore and Brands also argue that they are immune from liability, as to the
Plaintiff's state law claims, under the Ohio Political Subdivision Tort Liability Act,
Ohio Revised Code Chapter 2744. Doc. #34 at 12-13. The Court need not and,
therefore, does not reach this issue.

3

case, and on which that party will bear the burden of proof at trial." Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241,

1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

(1986). Once the burden of production has so shifted, the party opposing

summary judgment cannot rest on its pleadings or merely reassert its previous

allegations, it is not sufficient to "simply show that there is some metaphysical

doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go

beyond the [unverified] pleadings" and present some type of evidentiary material in

support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more

than a scintilla of evidence in support of his position; the evidence must be such

that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv.,

Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift

5

through the record in search of evidence to support a party's opposition to

summary judgment . . . .").  Thus, a court is entitled to rely, in determining whether

a genuine issue of material fact exists on a particular issue, only upon those

portions of the verified pleadings, depositions, answers to interrogatories and

admissions on file, together with any affidavits submitted, specifically called to its

attention by the parties.


II.     FACTS[5]

On Saturday, March 6, 2004, an officer with the Englewood Police

Department (not a party to this suit) stopped Sulfridge for speeding. Doc. #32

(Sulfridge Dep.) at 9-11.  During the stop, the officer informed her that there was

an outstanding warrant for her arrest for "writing bad checks," in the name of

"Cassandra Williams." Id. at 12, 14-15.  Over her protests that she was not

Cassandra Williams, Sulfridge was transported first to the Englewood Police Station

and then to the Montgomery County Jail, where she arrived at approximately

10:00 p.m. that evening. Id. at 12-17, 40.

Upon arrival at the Montgomery County Jail, Sulfridge once again maintained

that she was not Cassandra Williams. Id. at 18.  Once inside the jail, a female

---

[5]Since this case comes before the Court on the Defendants' Motions for
Summary Judgment, the Court sets forth the facts and circumstances giving rise to
such Motions in the manner most favorable to the Plaintiff, as the party against
whom the Motions are directed. Servo Kinetics, Inc. v. Tokyo Precision
Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

Sheriff's Department employee patted her down. Id. at 18-19. An officer went through her purse and placed the contents in a plastic bag. Id. She was carrying two driver's licenses, her own and one issued to Roberta Sulfridge, her deceased mother. Id. at 81.

While seated in the open seating area on the first floor of the jail, Sulfridge observed a woman prisoner in an adjoining glass-enclosed cell, who was bleeding. Id. at 28. A nurse came and examined the bleeding woman. Id. at 28-29. Several corrections officers then came in to clean the cell. Id.

In the meantime, other women prisoners were catcalling in the area Sulfridge was located, which prompted a guard to put all of the women (eight to ten), including Sulfridge, into the same glass-enclosed cell that the bleeding woman had previously occupied. Id. at 30. The cell smelled bad and was dirty. Id. at 31. There were traces of blood in the cell, as well as what looked like feces on the cell wall. Id. An officer eventually let five of the women out of the glass-enclosed cell, but not Sulfridge, indicating that there was still an issue as to her identification. Id. Sulfridge was later moved into a waiting area, where she had to sit on the floor, and then back into the glass-enclosed cell, this time with ten to twelve women. Id. at 32-35. On this second trip to the cell, she had to stand, because of the lack of space. Id. Sulfridge would not use the toilet in the cell, because she felt it was

unclean.[6] Id. at 35. Some of the other detainees called her names and made suggestive comments and gestures to her. Id. at 37.

Sulfridge was detained until approximately 5:00 a.m. the next morning, Sunday, March 7, 2004, when she was released on bond. Id. at 34, 39-40. Sulfridge's brother, Christopher Sulfridge, had posted her bond at approximately 12:30 a.m. that morning. Doc. #19 (Am. Compl.) ¶ 42.

Two days later, on Tuesday, March 9, 2004, Sulfridge appeared in court to be arraigned on bad check charges, at which time she explained to the judge that she was not Cassandra Williams. Doc. #32 (Sulfridge Dep.) at 41, 44-47. After the hearing, the judge sent Sulfridge and her brother to schedule a pretrial conference. Id. at 48. Sulfridge's brother explained her story to the clerk in charge of scheduling, who agreed that a mistake must have been made. Id. at 49. After returning home, Sulfridge received a phone call from the clerk, informing her that the court had dismissed the charges and would return her bond money. Id. at 50.

A few weeks later, Defendant Foley visited Sulfridge to explain how the mistake, which resulted in her arrest, had occurred. Id. at 52. Foley explained that someone in the Clerk of Court's office had mistakenly put Sulfridge's social security number on Cassandra Williams's file.[7] Id. at 52-53. Subsequently, Sulfridge learned

---

[6]The Complaint asserts that "Plaintiff had to go to the bathroom, but she didn't because she didn't want to go to the bathroom in front of all of those other women." Doc. #19 (Am. Compl.) ¶ 31.

[7]A more detailed explanation of the mix-up is contained in the Plaintiff's Complaint:

that the real Cassandra Williams had been picked up on the warrant in February of that year, so the warrant was no longer active. Doc. #19 (Am. Compl.) ¶¶ 20, 22.

On August 23, 2004, Sulfridge filed an internal grievance with the Sheriff's office, wherein she complained of the treatment she received from the time she was booked until the time she was released, with many of the same claims as she makes in this litigation. Doc. #34, Ex. B.[8] Defendant Sergeant Brands conducted an internal investigation of the complaint. Id. In the process of that investigation, Brands left a phone message on Sulfridge's home answering machine to set up an interview. Doc. #34, Ex. C ¶12. Sulfridge returned the call and left a message stating that she could not get in touch with her attorney. Id. Brands returned that call and left another message stating that a citizen is not required to have an attorney to file a complaint with the Sheriff's office. Id. As to the phone messages left on her home answering machine, Sulfridge states that she was the only one who

_____

Plaintiff's brother, Chris Sulfridge, was able to ascertain by the use of his computer that a Cassandra Williams had a case regarding bad checks. Plaintiff had a speeding ticket in October, 2003. Plaintiff's brother discovered that Cassandra Williams was arrested for bad checks. The file date of October 8, 2003 was the same as the file date of Plaintiff for her traffic ticket.

Doc. #19 ¶ 18.

[8]This Exhibit is not authenticated. Since there is no dispute between the parties as to the contents of the Exhibit, the Court will rely upon it, in ruling on the issues presented here. Specific instructions are given to Defendants, at the conclusion of this Decision, however, regarding placing this evidence in proper Rule 56 form. Failure to comply will cause this Court to vacate its ruling herein.

9

heard the messages and she does not feel that she was harmed by the same. Doc. #32 (Sulfridge Dep.) at 93. Although no interview of either Sulfridge or her attorney ever took place, Defendant Vore sent Sulfridge a letter stating that the internal investigation was complete, and that they had determined that there was no credible evidence to support her allegations, that the complaint was unfounded and that no further action would be taken. Doc. #2 (Compl.), Ex. B; Doc. #19 (Am. Compl.) ¶ 58.

III.   LAW

The Plaintiff's allegations are premised on 42 U.S.C. § 1983. Thus, this Court has federal question jurisdiction under 28 U.S.C. § 1331, with supplemental jurisdiction over any related state law claims under 28 U.S.C. § 1367.

A.   <u>Liability</u>

1.   <u>Section 1983, in General</u>

The Plaintiff brings suit against the Defendants, under 42 U.S.C. § 1983. According to Section 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

10

"Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere." <u>Cash v. Hamilton County Dep't of Adult Prob.</u>, 388 F.3d 539, 542 (6th Cir. 2004) (quoting <u>Braley v. City of Pontiac</u>, 906 F.2d 220, 223 (6th Cir. 1990)).

In order to determine whether a plaintiff has a viable claim under § 1983, courts engage in a two-pronged inquiry. "We first ask whether the plaintiff has asserted the deprivation of a right guaranteed by the Constitution or federal law. Second, we analyze whether the alleged deprivation was caused by the defendants acting under color of state law." <u>Powers v. Hamilton County Pub. Defender Comm'n</u>, 2007 U.S. App. LEXIS 20607, *30 (6th Cir. Aug. 29, 2007) (citing <u>Cash</u>, 388 F.3d at 542; <u>Alkire v. Irving</u>, 330 F.3d 802, 813 (6th Cir. 2003)). The parties in this case do not dispute the second part of this test. Thus, the Court's focus will be on whether the Plaintiff has asserted the deprivation of a right, or rights, guaranteed by the Constitution or federal law.

2.    <u>Supervisory Liability; Individual Capacity Claims</u>

When analyzing Section 1983 claims brought against a supervisor, in his individual capacity, courts must bear in mind that Section 1983 liability cannot be imposed under a theory of *respondeat superior*. <u>Taylor v. Michigan Dep't of Corrections</u>, 69 F.3d 76, 81 (6th Cir. 1995) (citing <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 691 (1978)). As explained by the Sixth Circuit,

11

> [I]n order for § 1983 liability to attach to an individual municipal supervisor, there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

Petty v. County of Franklin, 478 F.3d 341, 349 (6th Cir. 2007) (quoting Taylor, 69 F.3d at 81). Therefore, proof of personal involvement is essential for a supervisor to incur personal liability, under Section 1983.

### 3.  Municipal Liability; Official Capacity Claims

An official capacity suit against an employee of a governmental entity is a suit against the entity itself. Kentucky. v. Graham, 473 U.S. 159, 166 (1985) (citing Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).  Within the meaning of Section 1983, counties and other local governmental entities are considered "persons" and "may be sued for constitutional deprivations." Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690-91 (1978).

Despite being "persons" for the purposes of § 1983, however, local municipalities are not "liable for every misdeed of their employees and agents." Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003) (quoting Garner v. Memphis Police Dep't, 8 F.3d 358, 363 (6th Cir. 1993)).  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983." <u>Monell</u>, 436 U.S. at 694.

In order for a plaintiff to demonstrate municipal liability, she must: "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that this particular injury was incurred due to execution of that policy." <u>Alkire</u>, 330 F.3d at 815 (citation omitted). Thus, a plaintiff must show that a municipal policy or custom was the moving force behind the plaintiff's constitutional injury, in order to demonstrate municipality liability under § 1983. <u>Powers v. Hamilton County Pub. Defender Comm'n</u>, 501 F.3d 592, 607 (6th Cir. 2007).

### 4. <u>Constitutional Rights</u>

The Plaintiff alleges violations of her rights under the Fourth, Eighth and Fourteenth Amendments. Doc. #2 (Compl.); Doc. #36 (Pl.'s Mem. Opp'n to Foley Summ. J. Mot.); Doc. #39 (Pl.'s Mem. Opp'n to Vore/Brands Summ. J. Mot.). Thus, the Court's role here is to determine what rights the Fourth, Eighth and Fourteenth Amendments provide to the Plaintiff, in this case, in order to then determine whether the Defendants violated any of those rights, in the course of their conduct.

### a. <u>Fourth Amendment</u>

Generally, courts analyze claims of unlawful arrests, under the Fourth Amendment. <u>See e.g.</u>, <u>Brendlin v. California</u>, 127 S. Ct. 2400, 2405-06 (2007); <u>see</u>

13

also Berg v. County of Allegheny, 219 F.3d 261, 268-69 (3d Cir. 2000) (explaining that courts use the Fourth, rather than the Fourteenth Amendment, to analyze the constitutionality of arrests by state officials, because "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate") (citing County of Sacramento v. Lewis, 523 U.S. 833, 842-43 (1998)).  The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, provides that the people have "the right . . . to be secure in their persons, houses, papers, and effects, against unreasonable . . . seizures, . . . and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV; Maryland v. Pringle, 540 U.S. 366, 369 (2003) (citing Mapp v. Ohio, 367 U.S. 643 (1961)).

Thus, in determining whether there is a violation of the Fourth Amendment, courts must first determine whether the plaintiff was "seized" and, if so, whether the seizure was unreasonable.  In expounding on the Fourth Amendment's concept of "seizure," the Supreme Court explains that there must be "an intentional acquisition of physical control." Brower v. County of Inyo, 489 U.S. 593, 596 (1989).  Further, "[a] seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." Id. (citing Hill v. California, 401 U.S. 797, 802-05 (1971)).  As to whether a seizure is "reasonable," the Supreme Court instructs that

> In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a

14

> minimum requirement for a reasonable search permitted by the
> Constitution.  As a general rule, it has also required the judgment of a
> magistrate on the probable-cause issue and the issuance of a warrant
> before a search is made.

Chambers v. Maroney, 399 U.S. 42, 51 (1970).

### b.    Eighth Amendment

As to the alleged violation of the Eighth Amendment, said Amendment does not generally apply to pre-trial detainees. Bass v. Robinson, 167 F.3d 1041, 1048-49 (6th Cir. 1999).  As to challenged conditions in a jail, however, courts analyze Fourteenth Amendment pre-trial detention claims using the standards set forth for the denial of adequate treatment by convicted prisoners, under the Eighth Amendment. Danese v. Asman, 875 F.2d 1239, 1243 (6th Cir. 1989) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excess fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII (emphasis added).  On this point the Supreme Court notes that the "Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  "The Amendment . . . imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id.

15

(quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

A plaintiff must establish that the conditions of confinement denied her "the minimal civilized measure of life's necessities," in order to establish the deprivation of a constitutional right. Rhodes, 452 U.S. at 347. Conditions that "fall below our 'evolving standards of decency' will be considered cruel and unusual for purposes of the Eighth Amendment." Birrell v. Brown, 867 F.2d 956, 958 (6 Cir.1989) (quoting Rhodes, 452 U.S. at 346).

A prison official's actions do not trigger Eighth Amendment liability, however, absent a finding of deliberate indifference, which is the equivalent of a finding that the official recklessly disregarded a risk of harm. Farmer, 511 U.S. at 836. The Supreme Court explains this standard as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Id. at 837 ("The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishment.'").

<br>

c.    Fourteenth Amendment

The Fourteenth Amendment to the Constitution provides that, "[no State shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Supreme Court clarifies that the Fourteenth

16

Amendment "does not protect against all deprivations of liberty," but rather, "protects only against deprivations of liberty accomplished 'without due process of law.'" Baker v. McCollan, 443 U.S. 137, 145 (1979).

Specific to the mistaken identify issues in the present case, the Supreme Court instructs that,

> [g]iven the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.  Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.  The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.

Id. at 145-46.  Further, the Court recognizes that the "Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted -- indeed, for every suspect released. " Id. at 145.

As to Section 1983 due process claims in a non-custodial context (as with Count Three, in this case), the Sixth Circuit explains the requirements for finding a constitutional violation as follows:

> [I]n a non-custodial setting, in order to establish liability for violations of substantive due process under § 1983, a plaintiff must prove that the governmental actor either intentionally injured the plaintiff or acted arbitrarily in the constitutional sense.  [This Court previously] expressed doubt as to whether, in a non-custodial case, "deliberate indifference" could give rise to a violation of substantive due process. . . .  We believe the more exact standard . . . is that <u>in order to succeed on a</u>

17

> § 1983 claim in a non-custodial setting, a plaintiff must prove either
> intentional injury or arbitrary conduct intentionally designed to punish
> someone -- e.g., giving a worker a particularly dangerous assignment in
> retaliation for a political speech . . . or because of his or her gender.

Upsher v. Grosse Pointe Pub. Sch. Sys., 285 F.3d 448, 453 (6th Cir. 2002) (citing

and quoting Lewellen v. Metropolitan Govn., 34 F.3d 345, 350-51 (6th Cir. 1994);

some citations omitted) (emphasis added). Thus, Section 1983 claims for

negligence are not cognizable, under the Fourteenth Amendment. Collins v. City of

Harker Heights, 503 U.S. 115, 128 (1992) ("[W]e have previously rejected claims

that the Due Process Clause should be interpreted to impose federal duties that are

analogous to those traditionally imposed by state tort law.").


     B.    Judicial Immunity

Judicial immunity is a doctrine of absolute immunity "that operates to protect

judges and quasi-judicial officers alike from suit in both their official and individual

capacities." Dixon v. Clem, 2007 U.S. App. LEXIS 16247, **18-19 (6th Cir. July

10, 2007) (citing DePiero v. City of Macedonia, 180 F.3d 770, 783 (6th Cir. 1999);

Shelly v. Johnson, 849 F.2d 228, 230 (6th Cir. 1988)). "This far-reaching

protection 'is justified by a long-settled understanding that the independent and

impartial exercise of judgment vital to the judiciary might be impaired by exposure to

potential damages liability.'" Depiero, 180 F.3d at 783-84 (quoting Barnes v.

Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997)).

The Sixth Circuit instructs that absolute judicial immunity is overcome only in

two situations.  "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 784 (citations omitted).

> Whether an action is judicial depends on the "nature"' and "function" of the act, not the "act itself."  This functional analysis typically turns on two factors set forth by the Supreme Court in Stump v. Sparkman. First, looking to the nature of the act, courts must determine "whether it is a function normally performed by a judge." Stump, 435 U.S. at 362.

Id. (some quotations and citations omitted).  This determination requires the court "to look to the particular act's relation to a general function normally performed by a judge.  Second, looking to the expectations of the parties, courts must assess whether the parties dealt with the judge in his or her judicial capacity." Id.

In Foster v. Walsh,[9] the Sixth Circuit had occasion to address the question of whether the issuance of a warrant for arrest is a judicial act and answered in the affirmative. 864 F.2d 416, 417-18 (6th Cir. 1988) ("We have no difficulty concluding that the issuance of the warrant for Mr. Foster's arrest, even though non-discretionary, was a 'truly judicial act.'").  The Court thus concluded that the

---

[9]The appellee, in Foster v. Walsh, did not timely pay a fine that the court had imposed for driving with a suspended license. 864 F.2d 416 (6th Cir. 1988). Although he eventually paid the fine, the court mistakenly issued a warrant for his arrest.  Upon being stopped for a traffic violation, a computer check revealed the erroneous outstanding warrant, causing the appellee to be searched, arrested and taken to the police station, where he was detained for 14 hours until bail was posted.  The appellee eventually brought suit against the municipal court and its clerk, under 42 U.S.C. § 1983, alleging a violation of his constitutional rights.

clerk of courts, who issued an erroneous warrant in that case, was entitled to the dismissal he sought.[10] Id.


IV.    APPLICATION OF LAW TO FACTS OF THIS CASE

    A.    Count One - Unconstitutional Arrest; Defendant Clerk Foley

    In Count One of her Complaint, the Plaintiff argues that Defendant Foley violated her constitutional rights by not having policies and procedures in place to insure that innocent citizens are not falsely arrested and detained and, further, by not previously removing the employee who made the clerical error that caused the mistaken arrest in this case, since he had made two previous errors. Doc. #19 (Am. Compl.); Doc. #36 (Pl.'s Mem. Opp'n to Foley Sum. J. Mot.) at 1-10.  In so arguing, the Plaintiff points to the following evidence:

•    Foley's statement that there were no policies (and thus no training) about how to handle suspects who claimed there was an identity issue. Rather, those individuals would normally enter a not guilty plea and the case would then proceed through the trial process. Doc. #36 at 2-3.

•    Foley's indication that warrant training was conducted "on-the-job" (as opposed to being a scheduled training event, as Plaintiff's counsel proposed in the interrogatory question). Id. at 4.

•    Foley's response that a "Mr. Hardy" was the employee responsible for

_____

[10]In so holding, the Court noted that "[m]ost courts that have addressed this issue have held that a clerk who issues a warrant at the direction of a judge is performing a function to which absolute immunity attaches. The mere fact that an error is made in carrying out the judge's instruction is immaterial." Foster, 864 F.2d at 417 (citing Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988); Williams v. Wood, 612 F.2d 982, 985 (5th Cir. 1980)).

negligently and inadvertently placing the wrong social security number and birth date on the wrong file.  Also, a copy of a letter noting that this was the third occurrence of an arrest due to errors made by Hardy, with the first two warranting written reprimands. Id. at 4-5.

As legal support for her argument, the Plaintiff cites Berry v. Baca, 379 F.3d 764 (9th Cir. 2004).  The issue before the Ninth Circuit, in Berry, was whether the sheriff (as opposed to the clerk of courts, as in this case) had a policy of inaction, regarding release time for detainees, and whether such inaction amounted to a failure to protect the detainees' constitutional rights. Id. at 767 ("However, the policy of inaction must be more than mere negligence, it must be a conscious or deliberate choice among various alternatives).  In analyzing the facts before it (*e.g.*, 29 hours of "over-detention," after the court had ordered release, contrasted to the county's "substantial justifications" for its delay in releasing the detainees), the Appellate Court determined that there were sufficient genuine issues of material fact before it to make the case inappropriate for disposition at the summary judgment stage. Id. at 769.  The Berry Court made no mention of immunity defenses. See id.

Defendant Foley argues, among other things, that he is entitled to absolute judicial immunity, in his position as Montgomery County Clerk of Courts.

21

As previously noted, the Sixth Circuit has recognized that the doctrine of absolute judicial immunity protects quasi-judicial officers, to include clerks of courts, from both official and individual capacity suits. Dixon v. Clem, 2007 U.S. App. LEXIS 16247, **18-19 (6th Cir. July 10, 2007).  Further, a plaintiff may overcome absolute judicial immunity only in two instances, by a showing that the officer engaged in nonjudicial actions or, by a showing that he engaged in judicial actions, without jurisdiction. DePiero v. City of Macedonia, 180 F.3d 770, 784 (6th Cir. 1999).  The Sixth Circuit has, further, recognized that the issuance of a warrant for an arrest is a judicial act. Foster v. Walsh, 864 F.2d 416, 417-18 (6th Cir. 1988).

The Plaintiff here makes no argument to counter Defendant Foley's judicial immunity position. See Doc. #36 (Pl.'s Mem. Opp'n to Foley Sum. J. Mot.).  The Court cannot depart from Sixth Circuit precedent, in this area, given that this doctrine is settled and "is justified by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." Barnes v. Winchell, 105 F.3d 1111, 1115 (6th Cir. 1997).  The Court, therefore, finds it unnecessary to address the issue of whether Defendant Foley's actions, or inactions, violated the Plaintiff's rights, pursuant to Section 1983, since it concludes that, in any event, the doctrine of absolute judicial immunity protects him from such challenges.[11]  Since there are

[11]Although the facts of this case would tend to lend themselves to such an argument, the Plaintiff has not argued that her arrest violated the Fourth Amendment's prohibition against unreasonable seizures, because she was arrested

22

no genuine issues of material fact that would indicate that Defendant Foley should not be protected by the doctrine of absolute judicial immunity, his Motion for Summary Judgment (Doc. #30) is SUSTAINED.

B.    Count Two - Unconstitutional Treatment, as Pretrial Detainee;
      Defendant Sheriff Vore

In Count Two, the Plaintiff asserts that Sheriff Vore violated her constitutional rights by mistreating her, in various ways, while she was detained prior to release on bond. Doc. #19 (Am. Compl.).  In so doing, the Plaintiff argues, generally, that Vore, in his individual capacity,[12] violated her Eighth Amendment right to be free of cruel and unusual punishment, because of the various conditions she was subjected to and the treatment she received. See Doc. #39 (Pl.'s Mem. Opp'n to Vore/Brands Sum. J. Mot.) at 2-4; 6-9.  She also asserts that, in his official capacity, Vore is liable for failing to have a policy or procedure in place as to how to handle misidentified detainees. Id. at 10-14.

1.    Vore - Individual Capacity

---

on a warrant that was issued, without probable cause.  The Court finds it unnecessary to weigh in on this issue now, however, because the Defendant's judicial immunity would protect him against trial on such a factual pattern.

[12]The Plaintiff does not specify that she is making these claims against Vore, in his individual capacity, but since official capacity Section 1983 claims may only be brought challenging the execution of a government's policy or custom, Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978), the Court assumes these are individual capacity claims.

Specific to her individual capacity claims against Sheriff Vore, the Plaintiff cites the following facts, in support of her argument that he is liable for inflicting cruel and unusual punishment on her:

- That she had to sit on the floor or stand, because the jail was overcrowded. Doc. #39 (Pl.'s Mem. Opp'n to Vore/Brands Sum. J. Mot.) at 3-4, 7.

- That the glass-enclosed cell, in which she spent part of her time as a detainee, had blood and feces in it. Id. at 3.

- That she could not use the toilet in the glass-enclosed cell, because it had blood on it. Id.

- That she was detained too long (approximately 4.5 hours) after her brother posted bond for her. Id. at 6.

- Vore should have known that the jail was filthy and he should have taken actions to rectify the situation. Id. at 8.

- That the Sheriff's Department failed to take any action to ascertain whether she was, in fact, the person for whom the warrant had been issued. Id. at 9.

As legal support for her arguments, the Plaintiff cites Johnson v. Lark, 365 F. Supp. 289 (E.D. Mo. 1973) and Miller v. Carson, 401 F. Supp. 835 (M.D. Fla. 1975), both of which determined that the detention conditions before those courts were unconstitutional. Doc. #39 at 3-4 (pointing out that, in Johnson, three men were confined in tiny two-man cells, with one man sleeping on the damp floor that was only cleaned once a week; not citing any facts from Miller).

Among other things, Vore argues that the Plaintiff sets forth no evidence that indicates he was actually involved in any of the alleged violations and, without such

24

evidence, he, as the supervisor, cannot be held liable. Doc. #34 (Vore/Brands Summ. J. Mot.) at 10; Doc. #40 (Vore/Brands Reply Mem.) at 6. The Court is persuaded by the Defendant's argument, on this issue.

None of the points of which the Plaintiff complains (*e.g.*, overcrowding, unsanitary conditions, over-detention, improper investigation into identity) are attributed to direct actions of the Sheriff. In fact, the Plaintiff makes no allegation that the Sheriff was present during the seven-hour period, in which she was detained. Rather, the Plaintiff's allegations are directed to Vore, in his role as the supervisor of the Sheriff's Department. The Supreme Court and the Sixth Circuit have been made it clear, however, that Section 1983 liability cannot be imposed under a theory of *respondeat superior*. Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 81 (6th Cir. 1995) (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691 (1978)). When asserting a Section 1983 claim against a supervisor, in his individual capacity, a plaintiff must show that the supervisor had some personal involvement in the alleged misconduct, that he "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Petty v. County of Franklin, 478 F.3d 341, 349 (6th Cir. 2007) (quoting Taylor, 69 F.3d at 81).

It is unclear whether any of the offending actions in this case rise to the level of "unconstitutional conduct." That issue aside, however, the Plaintiff has set forth no evidence to show that Vore was personally involved with any of the conduct,

with which the Plaintiff takes exception.

The Sixth Circuit recently faced a similar situation.  In <u>Petty v. County of Franklin</u>, *supra*, the plaintiff alleged violations of his constitutional rights, because he was placed in a cell with violent inmates, he was denied proper medical attention and transportation, and he did not receive a proper diet. 478 F.3d at 348.  The Sixth Circuit refused to hold the sheriff liable, however, because the plaintiff had presented no evidence that the sheriff was present during any of the alleged incidents or that he was directly involved in the oversight of the detainee's treatment. <u>Id.</u> at 348-49 ("[N]either in Petty's complaint, nor in his affidavit attached to his reply to the Defendants' motion for summary judgment, nor in his entire deposition, is there any whiff of Sheriff Karnes's personal involvement in or awareness of--either directly or indirectly--Petty's situation.").  Because there was no showing that "the supervisor encouraged the specific incident[s] of misconduct or in some other way directly participated in it," the Court determined that the sheriff was not liable for any constitutional violation, in his individual capacity. <u>Id.</u> at 349 (quoting <u>Taylor</u>, 69 F.3d at 81).

Likewise, in this case, the Plaintiff has presented no evidence that the Sheriff was present during any of the alleged incidents or that he was directly involved in the oversight of the Plaintiff's treatment.  Since there are no genuine issues of material fact that would indicate that Defendant Vore had personal involvement in or awareness of the alleged unconstitutional actions, his Motion for Summary

Judgment (Doc. #34), as it pertains to the claims against him in his individual capacity in Count Two, is SUSTAINED.


        2.    <u>Vore - Official Capacity</u>

As explained above, a Section 1983 official capacity suit against an employee of a governmental entity is, in fact, a suit against the entity itself. <u>Kentucky. v. Graham</u>, 473 U.S. 159, 166 (1985) (citing <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985)).  In order to hold a municipality liable, a plaintiff must:  (1) identify an unconstitutional policy or custom, (2) connect the policy to the municipality, and (3) show that her injury was incurred due to execution of that policy or custom. <u>See Turner v. City of Taylor</u>, 412 F.3d 629, 640 (6th Cir. 2005); <u>Alkire v. Irving</u>, 330 F.3d 802, 815 (6th Cir. 2003) (citation omitted).

The Plaintiff alleges that Vore violated her constitutional rights, in his official capacity. Doc. #39 (Pl.'s Mem. Opp'n to Vore/Brands Sum. J. Mot.) at 10-14.  In so doing, she argues that he was deliberately indifferent to her rights, because he had no policy or procedure in the Jail Manual,

> as to how to deal with a situation in which prisoner has claimed that he or she is not the person for whom a warrant has been issued, and when the person has identification on her person which indicates with a picture I.D. that the person's name is not the name of the person for whom the warrant was issued, but in fact is an entirely different name.

<u>Id.</u> at 10.  In support of her contentions, the Plaintiff cites <u>Berry v. Baca</u>, 379 F.3d 764, 769 (9th Cir. 2004), wherein the Ninth Circuit stated that, "[t]he need for

27

different procedures was so obvious that [the county official's] adamant refusal to take action amounted to deliberate indifference to the detainees' constitutional rights."[13]

Defendant Vore argues that in order for the Plaintiff to assert a proper municipal liability claim, she must assert the deprivation of a constitutional right and demonstrate that the municipality is responsible for the violation. Doc. #40 (Vore/Brands Reply Mem.) at 7 (citing Doe v. Claiborne County, 103 F.3d 495, 505-06 (6th Cir. 1996)).  The Defendant goes on to argue that his failure to have a policy or custom dealing with the release of persons who claim misidentification, based on a showing of a driver's license or credit card, is not unconstitutional. Id. at 10. Further, such a policy or custom would be "naive to the reality of forged identification documents." Id.

The policy (or lack thereof) challenged by the Plaintiff pertains to handling a detainee who claims misidentification and who has proper picture identification on her person.  The Plaintiff points to no cases, and the Court has found none, that have determined that not having such a policy or custom is

_____

[13]The Plaintiff's reference to the Berry case, in this context, is generally the same as was suggested *supra*, in paragraph A of Section IV.

The Plaintiff also cites Kennell v. Gates, 215 F.3d 825 (8th Cir. 2000), for the proposition that, in a Section 1983 misidentification case, the issue is whether the defendant police officer had information indicating that the wrong person had been detained. Doc. #39 (Pl.'s Mem. Opp'n to Vore/Brands Sum. J. Mot.) at 10-11,13. Since that case did not deal with municipal liability, but rather, individual liability of the police officer in question, the Court finds it inapposite here.

unconstitutional. Although there are certainly some conceivable policies that could pertain to detainee misidentification, having a policy such as the one suggested by the Plaintiff, however, could be fraught with danger. As suggested by the Sheriff, releasing a detainee on his or her claim of misidentification, even with some sort of picture identification to back up the claim, could lead to untold problems, given the stolen and forged identification documents that abound in these days.

Absent any indication, in either case law or in the specifics of this case, that not having such a policy or custom dealing with the claimed misidentification of detainees is unconstitutional, the Plaintiff's arguments here are not well-taken. Thus, since there are no genuine issues of material fact that would indicate that the Sheriff's Department's lack of such a policy is unconstitutional, Defendant Vore's Motion for Summary Judgment (Doc. #34), as it pertains to the claims against him in his official capacity in Count Two, is SUSTAINED.

C.    Count Three - Improper Handling of Grievance filed with Sheriff's Department; Defendants Sheriff Vore and Sergeant Brands

In Count Three, the Plaintiff asserts that Sheriff Vore and Sergeant Brands violated her constitutional rights by improperly handling the grievance she filed with the Sheriff's Department, after her release from detention. Doc. #19 (Am. Compl.) ¶¶ 53-60. The Plaintiff asserts the following, in support of her contentions:

- The Defendants have now conceded that some portions of her grievance were true (*i.e.*, that there was a woman bleeding in the cell and a nurse came to help her), which leads to two conclusions: (1) the Sheriff's letter concluding

29

that the Plaintiff's complaints were "unfounded" is a "false statement and would have to be an attempt to cover up the treatment of [the Plaintiff] while she was at the Montgomery County Jail," and (2) there are material questions of fact as to whether there was an adequate investigation into her complaint. Doc. #39 (Pl.'s Mem. Opp'n to Vore/Brands Sum. J. Mot.) at 4-6.

• When Sergeant Brands advised the Plaintiff that "she did not need to bring her attorney to the meeting with him to investigate her complaint," he violated her constitutional rights by "deliberately attempting . . . to influence [her] not to bring her attorney with her," when he was on notice that she had an attorney. Id. at 5; Doc. #19 (Am. Compl.) ¶ 55.

• The Sheriff's office and Sergeant Brands violated various parts of the Department's internal written policy. Doc. #39 at 14-19.

• With regard to Sergeant Brands leaving a voice message at her home, it was grossly negligent to have no policy to ensure the privacy of persons making complaints. Id. at 21-24.

In support of her contentions, the Plaintiff cites Berry v. Baca, 379 F.3d 764 (9th Cir. 2004), for the same policies and procedures proposition, as twice-cited herein (*e.g.*, if the need for different procedures is patently obvious, an official's refusal to take action demonstrates a deliberate indifference to the detainee's rights). Id. at 22-23. The Plaintiff also cites Whalen v. Roe, 429 U.S. 589 (1977), which states that an individual has a due process right to privacy when there is a "legitimate expectation" of the same.[14] Doc. #39 at 23-24.

---

[14]The Plaintiff cites a third case, which is not attached to her briefing material, not reported and not available through either Lexis or WestLaw. Doc. #39 at 20 (citing Gillentine v. Vanzant, Case No. C-3-89-393). According to the Plaintiff's memorandum in opposition, that case found that summary judgment was not appropriate as to claims against an officer, if the facts indicated that the officer refused to investigate and helped to cover up an incident involving false arrest and/or excessive force. Assuming the account of this case to be as the Plaintiff describes, the Court finds that it is not pertinent to the case at bar, since the facts

The Defendants argue that the Plaintiff has not shown that any of the allegations she raises constitute constitutional violations. Doc. #34 (Vore/Brands Summ. J. Mot.) at 10-11.   The Court agrees.

As stated at the outset of this opinion, the basic requirement of all Section 1983 claims is that a plaintiff assert the deprivation of a right guaranteed by the Constitution or federal law. See Cash v. Hamilton County Dep't of Adult Prob., 388 F.3d 539, 542 (6th Cir. 2004).  Whether looking at Count Three through the lens of a personal liability claim (as against Brands, in his individual capacity), a supervisor liability claim (as against Vore, in his individual capacity) or a municipal liability claim (as against both Defendants, in their official capacities), it holds true that the Plaintiff's claim cannot stand unless she identifies a deprivation of cognizable federal rights.  This, she has not done.

The Sixth Circuit has made it clear that in order to demonstrate constitutional violations under Section 1983, in a non-custodial context, a plaintiff must show either intentional injury or arbitrary conduct intentionally designed to punish someone. Upsher v. Grosse Pointe Pub. Sch. Sys., 285 F.3d 448, 453 (6th Cir. 2002).  Assertions of negligence alone are insufficient. Id. at 454.  Here, even assuming that all of the Plaintiff's allegations are true, there is absolutely no indication that either of the Defendants intended to injure the Plaintiff or participated

_____

here do not indicate that the Defendants either intentionally injured the Plaintiff or acted in an arbitrary manner intentionally designed to punish her, which is the standard currently set forth by the Sixth Circuit.

31

in arbitrary conduct with the intent to punish her.

Since there are no genuine issues of material fact, as to whether the Defendants violated the Plaintiff's constitutional rights in the manner in which they handled her grievance with the Sheriff's Department, Defendants Vore's and Brands's Motion for Summary Judgment (Doc. #34), as it pertains to Count Three, is SUSTAINED.


V.     STATE LAW CLAIMS

"Where a district court exercises jurisdiction over state law claims solely by virtue of pendent jurisdiction and the federal claims are dismissed prior to trial, the state law claims should ordinarily be dismissed without reaching their merits." Pilgrim v. Littlefield, 92 F.3d 413, 417 (6th Cir. 1996) (citations omitted). Because the Court has now disposed of all of the federal claims herein, it dismisses all of the pendent state law claims, without prejudice to refiling in a state court of competent jurisdiction.


VI.     CONCLUSION

Defendant Foley's Motion for Summary Judgment (Doc. #30) is SUSTAINED. Defendants Vore's and Brands's Motion for Summary Judgment (Doc. #34) is SUSTAINED.   All of the Plaintiff's federal claims having been disposed of, the Plaintiff's state law claims are dismissed, without prejudice to refiling in a state court

of competent jurisdiction.

Judgment will be ordered entered on behalf of all Defendants and against the Plaintiff.

All rulings hereunder are made on the condition that the Defendants provide proper Rule 56 evidence of the documents pertaining to the Plaintiff's complaint filed with the Sheriff's office, attached to Document #34, as Exhibit B, to the Court within ten (10) days of the date of this Order. Failing this, this Decision and Judgment entered thereon will be vacated.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

March 11, 2008

_____/s/ Walter Herbert Rice_____
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record

33